## B. A. Railton v. Chicago Title & Trust Company, Trustee.

### Gen. No. 12,297.

1. BANKRUPTCY ACT—*rights of mortgagee when sale to has been set aside as made with attempt to hinder creditors.* If a sale be set aside, at the instance of a trustee in bankruptcy, as fraudulent under the Bankruptcy Act, the fact that the fraudulent vendee prior to accepting absolute transfer had a mortgage upon the same property, will not entitle him to a lien thereon.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Affirmed. Opinion filed March 23, 1906.

Statement by the Court. Edward M. Sanders filed his petition in bankruptcy April 28, 1902, in the District

Court of the United States for the Northern District of Illinois, was adjudged bankrupt, and appellee was appointed trustee of the bankrupt estate.

Appellee as such trustee then brought an action against appellant in the Superior Court to recover the value of a stock of groceries, horses, wagons, etc., transferred by the bankrupt to appellant April 13, 1902, within four months prior to the filing of the petition, upon the ground that such transfer was made by the bankrupt with the intent and purpose to hinder and delay his creditors and that appellant was not the purchaser thereof in good faith and for a present consideration. The plaintiff recovered a judgment for $1050 against the defendant, from which judgment the defendant prosecutes this appeal.

WALKER & WILLIAMS, for appellant.

WHEELER, SILBER & ISAACS, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

From 1897 to April 14, 1902, Sanders, the bankrupt, had a retail grocery store in Chicago. He purchased goods from appellant, a wholesale grocer, and January 7, 1898, gave him 'a note and a chattel mortgage to secure the same, upon his stock of goods and other property used in his business. When this note became due a new note and mortgage were given in renewal, which in time were renewed by a new note and mortgage which became due January 7, 1902. On that day Sanders gave to Railton a note for $750 and a chattel mortgage to secure the same, in renewal of the former note and mortgage, upon the fixtures and utensils connected with his grocery business, three horses, three wagons, harness and all the stock of groceries then in his store at 204 Thirty-ninth street, Chicago, and all the stock, fixtures, etc., which he might thereafter place in his said store.

April 13, 1902, Sanders was in fact insolvent. He owed more than $4000, and his property consisted of his grocery store, horses, wagons and fixtures, which were transferred

to appellant on that day and sold by him the next day for $1050. Sunday, April 13, 1902, Brennan and Mullen were at the store with Sanders, negotiating with him in reference to a sale of the property of Sanders to Brennan. Mullen was a salesman in the employ of Walsh, Boyle & Company, to whom Sanders owed $188. Brennan offered Sanders $1100 for the property and Sanders declined the offer. Mullen then said to Sanders, "We will make you do business." After Brennan and Mullen went away, Sanders went with his lawyer to Railton's house and there, at eleven o'clock Sunday night, a bill of sale of said property from Sanders to Railton was executed by Sanders and delivered to Railton for an expressed consideration of $489.66, which included the amount due from Sanders to Railton, on open account $389.66 and $100 added for interest on that amount and other amounts theretofore paid by Sanders to Railton. Railton took possession of the property the following morning. The same morning Walsh, Boyle & Company sued out an attachment against Sanders for $188, levied upon the property and put a custodian in the store. Railton thereupon, without consulting Sanders, sold the property to Brennan for $1050 and out of the proceeds paid Walsh, Boyle & Company the $188 Sanders owed them, and the levy under the attachment was released. Railton paid to Sanders' lawyer $50 claimed by him to be due for his services to Sanders in relation to said sale, made some allowance or deduction for rent, so that he claimed that the difference between the amount he received from Brennan, $1050, and the amounts paid by him out of the money so received, added to $489.66 he claims he was entitled to from the bankrupt, was $345.35, and this amount with the costs he tendered to the plaintiff. The clauses of the Bankrupt Act concerning transfers in fraud of creditors are:

"Section 67e: That all conveyances, transfers, assignments or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act, subsequent to the passage of this act and within four months prior to the filing of the petition,

with the intent and purpose on his part to hinder, delay or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned or encumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors. And all conveyances, transfers or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the state, territory or district in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankruptcy."

Section 70a, subds. 4, 5, which read substantially as follows:

"The trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt * * * to all * * * (4) property transferred by him in fraud to his creditors; (5) property which, prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him. * * *"

" Section 70e: The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, from the person to whom it was transferred, unless he was a *bona fide* holder for value prior to the date of adjudication. Such property may be recovered or its value collected from whoever may have received it, except a *bona fide* holder for value."

An explanation of the incorporation into the Bankrupt Act of the provisions of sections 67 and 70 above quoted is given in *In re Mullen,* 101 Fed. Rep., 413–415, but it is not material in this case to inquire whether the provisions of the two sections can be so interpreted and arranged as to be altogether free from contradiction, repetition or redundancy. Section 70e gives to the trustee of the bankrupt estate such rights as the creditors of the bankrupt or any of them possessed to set aside and avoid fraudulent transfers of his property made by the bankrupt without regard to the time when such transfer was made. Section 67e gives him such power where the transfer was made within four months prior to the filing of the petition in bankruptcy, and as the transfer in this case was made within that period, the provisions of both sections are applicable. We shall not stop to examine in detail the evidence in the record, which in our opinion is abundant to warrant the jury in finding that the bill of sale was made and the property transferred by Sanders to Railton with the intent and purpose on the part of Sanders to hinder and delay his creditors and to secure and reserve to himself a secret interest in the property so transferred, although the bill of sale upon its face purported to transfer the property absolutely to Railton, and that such intent and purpose on the part of Sanders were known to Railton, and that he accepted such transfer to aid Sanders to carry out such intent and purpose.

The contention that if the transfer was made to hinder and delay creditors, Railton may be regarded as a mortgagee in possession of the mortgaged property and therefore entitled to a lien thereon for the amount due under the mortgage of January 7, 1902, cannot be sustained. The mortgage was abandoned by the act of the parties. Railton did not take possession of the property on April 14th, and sell the same as mortgagee under the mortgage, but under what purported to be an absolute sale and transfer of the property to him and he resold the property to Brennan on April 14th, without the knowledge or consent of the bankrupt,

although the bankrupt appears subsequently to have ratified or assented to such sale.

The property so sold was not under the statute of Illinois specifically exempt from execution. If it had been levied upon under an execution against the bankrupt he might have made a schedule of all of his property and selected articles, the aggregate value of which did not exceed the amount to which he was entitled, and he may now, perhaps, be entitled to have his exemptions set apart to him out of the proceeds of this judgment when collected; but this must be done by the trustee, under the provisions of the Bankrupt Act, under the control and directions of the bankrupt court.

We find no reversible error in the rulings of the court upon questions of evidence or instructions.

The judgment of the Superior Court will be affirmed.

*Affirmed.*